UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
REGGIE VEGA,

                              Petitioner,

         -against-

THOMAS GRIFFIN,
*Superintendent of Green Haven Correctional Facility*,

                              Respondent.
-----------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
14-CV-7479-KAM-SJB

**BULSARA, United States Magistrate Judge:**

On December 19, 2014, Reggie Vega ("Vega"), proceeding *pro se*, filed this

petition seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  In his petition, Vega

alleges that he was denied effective assistance of counsel when his attorney Vincent

Siccardi ("Siccardi") failed to advise Vega on consequences of a guilty plea and coerced

Vega into accepting a less favorable plea deal.  For the reasons stated below, it is

respectfully recommended that the petition be denied and a certificate of appealability

not issue.

<u>FACTS AND PROCEDURAL HISTORY</u>

A.  <u>The Underlying Criminal Conduct</u>

On June 7, 2006, at approximately 4:20 am, Police Officer Peter Mikulus, while

on routine motor patrol, drove by a gentleman's club located on Steinway Street and

35th Avenue in Queens.  (Mapp Suppression Hr'g Tr. dated Aug. 23, 2007 ("Mapp Tr."),

attached to State Court Record, Dkt. No. 19 at 2:20–4:22).  Officer Mikulus heard three

gun shots coming from the west side of the building.  (*Id.* at 4:15–4:25, 5:10–5:16).

After hearing the shots, Mikulus drove over to the west side of the building.  (*Id.* at

5:19–5:24).  As he approached, he saw a man, later identified as Joseph Nichols, lying in the middle of the intersection in a pool of blood.  (*Id*. at 6:02–6:08).  Mikulus also saw another male—later identified as Vega, (*id*. at 9:16–10:07)—with a gun in his hand, approximately twenty feet away Nichols, putting the hood of a black sweatshirt over his head.  (*Id*. at 6:02–7:08).  Vega began to run; Mikulus followed in his car.  (Mapp Tr. at 7:16–8:02).  Mikulus saw Vega drop something on the ground.  (*Id*. at 8:03–8:05).  When Vega ran behind a house on 37th Street, Mikulus got out of his car and ran after him.  (*Id*. at 8:21–9:01).  Vega fell, and a gun dropped to the ground.  (*Id*. at 9:02–9:05).  He got up and continued to run until he reached a ten-foot fence, which he was unable to climb.  (*Id*. at 9:05–9:12).  Mikulus grabbed Vega, handcuffed him, and retrieved a black handkerchief, chain with a diamond cross, and another chain with a photo of two children from Vega.  (*Id*. at 9:13–9:15; 11:04–11:06).  Mikulus backtracked to the place where he saw Vega drop the gun and recovered the loaded firearm.  (Mapp Tr. at 10:10–10:23).  He then walked back to where he had first seen Vega drop an object to the ground and recovered a wristwatch.  (*Id*. at 11:09–11:18).  The wristwatch and chains were later shown to Nichols who identified them as his property.  (*Id*. at 11:22–11:24, 16:01–16:12).

Soon after his arrest, Vega was charged with Attempted Murder in the Second Degree (N.Y. Penal Law §§ 110.00, 125.25(1)), two counts of Robbery in the First Degree (§§ 160.15(1), (2)), Criminal Use of a Firearm in the First Degree (§ 265.09(1)), Assault in the First Degree (§ 120.10(1)), Criminal Possession of a Weapon in the Third Degree (§ 265.2(4)).  (Aff. in Opp. to Habeas Pet. dated July 17, 2015, Dkt. No. 20 ¶ 5 (citing Queens County Indictment Number 2098/06)).

## B. The *Mapp* and Plea Hearing

On August 23, 2007, Vega appeared before the Honorable Thomas Demakos in New York State Supreme Court, Queens County for a *Mapp* suppression hearing.[1] (Mapp Tr. at 1). At the *Mapp* hearing, Officer Mikulus testified on behalf of the State and recounted the facts that led to the finding of the firearm as well as the victim's possessions. (*Id*. at 1–17). The rulings from the *Mapp* hearing were not provided to this Court, but it appears from Vega's habeas petition, (Mem. in Supp. of Habeas Pet. dated Dec. 19, 2014 ("Vega Mem."), attached to Habeas Pet., Dkt. No. 1 at 28), as well as the facts surrounding the plea hearing and sentencing hearing, that Justice Demakos ruled against Vega.

On Wednesday, September 26, 2007, Vega appeared before the Honorable Darrell Gavrin in New York State Supreme Court, Queens County for a plea hearing. (Plea Hr'g Tr. dated Sept. 26, 2007 ("Plea Tr."), attached to State Record, Dkt. No. 19 at 1). He was represented by Siccardi. (*Id*.). The Court informed the parties that it had adopted the findings from the earlier *Mapp* suppression hearing and that trial was to begin that same day. (*Id*. at 2:14–2:20 ("Mr. Siccardi: And then to set a trial date, that is what I assume. The Court: Okay, that is good. The trial date is today.")). Siccardi informed the Court that he was not prepared, and the Court suggested starting the following Monday instead. (*Id*. at 2:21–2:23). Siccardi then requested a sidebar conference. (*Id*. at 2:24–2:25). After a brief discussion at the sidebar between counsel and the Court, Vega was brought before the Court. (*Id*. at 3:01–3:07).

---

[1] *Mapp v. Ohio*, 367 U.S. 643 (1961).

Siccardi informed the Court that Vega wished to withdraw his plea of not guilty and plead guilty to Attempted Murder in the Second Degree (N.Y. Penal Code §§ 110, 125.25) in full satisfaction of the indictment in exchange for a determinate prison term of 20 years, to be followed by five years of post-release supervision. (Plea Tr. at 3:11–3:21). Vega was sworn in, and the Court asked him if he had discussed the plea with his attorney. (*Id.* at 4:08–4:10; 4:20–4:21 ("The Court: Have you discussed this proposed plea of guilty with your attorney Mr. Siccardi?")). Vega responded, "Yes, your Honor." (*Id.* at 4:22). The Court then asked if Vega was entering this plea of guilty with the advice and consent of his attorney, to which Vega again responded yes. (*Id.* at 4:23–5:01 ("The Court: And you are entering this plea of guilty with the advice and consent of your attorney Mr. Siccardi? [VEGA]: Yes, your Honor.")). Next, the Court asked if Vega was satisfied with Siccardi's representation and his advice, to which Vega again responded yes. (*Id.* at 5:02–5:04 ("The Court: And you are satisfied with his representation and his advice? [VEGA]: Yes, your Honor.")).

The Court continued to question Vega about his understanding of his plea:

THE COURT: Do you understand by pleading guilty of this charge of attempted murder you are confessing your guilt to the charge?

[VEGA]: Yes, your Honor.

THE COURT: And you understand that by pleading guilty you are pleading guilty to a class B felony?

[VEGA]: Yes, your Honor.

(*Id.* at 6:23–7:05). Vega then admitted to a number of facts, including that on or about June 7, 2006, he approached Nichols and fired a gun at him with the intent to cause his death. (Plea Tr. at 8:03–8:21). Vega also acknowledged that he understood that, by pleading guilty, he was waiving his rights to a trial. (*Id.* at 8:25–10:12). The Court

inquired if Vega had any defenses to the crime, to which Vega responded, "No." (*Id.* at 10:21–10:22). When asked if he was pleading guilty of his own free will, Vega responded "Yes." (*Id.* at 10:23–10:24). He acknowledged that neither he nor any member of his family had been threatened to induce him to plead guilty. (*Id.* at 10:16–10:22). The Court also inquired if any other promises had been made to him in exchange for his guilty plea, to which Vega responded no. (*Id.* at 11:05–11:08). When asked again if Vega was satisfied with the representation of Mr. Siccardi, Vega responded, "Yes." (*Id.* at 11:20–11:22). Finally, the Court asked if Vega had answered all the questions truthfully; Vega responded, "Yes." (*Id.* at 11:23–11:25).

    C.  <u>The Sentencing Hearing</u>

       On October 15, 2007, Vega appeared with Siccardi for sentencing before Justice Gavrin in New York Supreme Court, Queens County. (Sentencing Hr'g Tr., attached to State Record ("Sent. Tr."), Dkt. No. 19 at 1). Vega read a statement in which he expressed remorse for his actions, but at the end of the statement, Vega told the Court that he had been untruthful when responding to one of the questions asked of him at the prior plea proceeding. (*Id.* at 3:18–5:08). Vega told the Court that he had been in a state of shock when he first answered the Court's questions and, as a result, his thinking was so impaired that he lied about being satisfied with his lawyer's representation. (*Id.* at 5:05–5:13). According to Vega, during the 16 months Siccardi was his attorney, Vega never had "one constant meeting" with him and Siccardi never came to Vega's holding cell to discuss his case. (*Id.* at 5:14–5:16). Vega later learned through his wife that there had been a potential plea deal of 15 years that was never brought to his attention. (*Id.* at 5:20–6:04). Vega also claimed that he felt threatened by Siccardi who told him that Justice Gavrin would give him consecutive sentences on all counts if he were found

5

guilty at trial. (*Id.* at 6:10–6:14). Vega also stated that it was improper for him not to be present at the Court's sidebar conference. (Sent. Tr. at 6:14–6:17).

After Vega concluded, the prosecutor, Rachel Buchter, told the Court that the plea colloquy was extensive and indicated that Vega had entered a plea voluntarily and knowingly. (*Id.* at 7:08–7:12). She also stated that there had never been a 15-year plea offer. (*Id.* at 7:21–7:23 ("15 years has never been an offer in this case, nor would it ever have been.")).

Siccardi then also told the Court that there had never been an offer of 15 years. (*Id.* at 8:04–8:07). Siccardi said that although he had discussed an offer of 17 years with Vega, his wife, and his mother, he had explained that he thought 17 was going to be the lowest possible offer. (*Id.* at 8:07–8:11). Siccardi also told the Court that he had not threatened Vega by telling him that the Court would impose consecutive sentences; instead, he had advised Vega that if he proceeded to trial, he could receive a sentence of more than twenty years. (*Id.* at 8:22–9:02 ("[SICCARDI]: I also did not tell him you were going to make anything consecutive, but after the bench conference the last appearance, I told him after a trial, if he was convicted, that you may very well give more than a 20-year sentence and that it was certainly [the Court's] prerogative to do so.")).

The Court told Vega that his allegations regarding Siccardi's representation were disingenuous and that nothing in this case had been decided or discussed outside of his presence. (Sent. Tr. at 9:04–9:14). The Court then advised Vega that if he was asking for his plea to be withdrawn, the request was being denied. (*Id.* at 9:17–9:18). The Court told Vega he was bound by the current plea agreement. (*Id.* at 9:19–9:20).

Vega told the Court that he may have been mistaken as to whether the initial offer was 15 or 17 years. (*Id.* at 10:09–10:12). Regardless, he claimed he never had the

opportunity to take the 17-year offer because Siccardi rejected it without consulting him. (*Id.* at 10:09–10:21). The prosecutor interjected to advise the Court that the offer of 17 years was made pre-indictment, and Vega rejected the plea at that time. (*Id.* at 10:24–10:25). After indictment, the offer of 17 years was no longer available. (Sent. Tr. at 10:25–11:04). The Court noted that what most likely happened was that Vega did not fully realize that the 17-year offer was only available pre-indictment and that the offer would no longer be available once the case proceeded beyond that stage. (*Id.* at 11:05–11:11). The Court proceeded to sentence Vega to a term of 20 years to be followed by five years of post-release supervision. (*Id.* at 11:21–12:04).

      D. The Initial Appeal

      In December 2010, Vega, represented by new counsel Lynn W.L. Fahey, appealed to the New York State Appellate Division, Second Department. (*See* Def.-Appellant's Br. dated December 2010 ("Vega App. Br. I"), attached to State Record, Dkt. No. 19 at 1). Vega argued that he was denied effective assistance of counsel, because at the sentencing hearing Siccardi contradicted Vega's claim that Siccardi failed to convey the lower plea offer and coerced him into taking the 20-year plea deal; that is, Siccardi effectively became an adverse witness against Vega at sentencing. (*Id.* at 7). Vega asked that his case be remanded for a new determination on his motion to withdraw his plea and that he be represented by a different counsel at the hearing. (*Id.* at 11–12).

      On October 5, 2011, the Appellate Division held that Vega's right to counsel was adversely affected when his attorney, "in effect, became a witness against him and took a position adverse to him with respect to the motion at sentencing[.]" *People v. Vega*, 88 A.D.3d 1022, 1022 (2d Dep't 2011). The Appellate Division found that the New York State Supreme Court should have assigned a different attorney to represent Vega before

it ruled on Vega's motion to withdraw his guilty plea. *Id.* at 1022–23. The appeal was held in abeyance and the case was remanded to the New York State Supreme Court for a hearing on Vega's motion to withdraw his guilty plea with new counsel representing Vega. *Id.* at 1023.

E. Proceedings on Remand

On December 6, 2011, a hearing was held on the motion to withdraw the plea before Justice Darrell Gavrin at the New York Supreme Court, Queens County. (Tr. of Hr'g on Mot. to Withdraw Plea dated Dec. 6, 2011 ("Dec. 6 Tr."), attached to State Record, Dkt. No. 19 at 1). Vega was represented by attorney Wyatt Gibbons. (*Id.*). At the hearing, the prosecutor, Rachel Buchter, testified that after reviewing her records, she realized that there had never been an offer of 15 or 17 years. (*Id.* at 13:18–14:04). The lowest offer that was conveyed was an offer of 18 years pre-indictment, which the prosecutor claimed Vega rejected. (*Id.* at 14:04–14:06, 14:23–14:25).

The hearing was continued to December 19, 2011, when the New York Supreme Court held another conference. (Tr. of Hr'g on Mot. to Withdraw Plea dated Dec. 19, 2011 ("Dec. 19 Tr."), attached to State Record, Dkt. No. 19 at 27). At this hearing, Vega was called to testify. (*Id.* at 52:09–52:10). He claimed that Siccardi came to visit him in the pens in the courtroom approximately three times in total and "always briefly before coming out to the court." (*Id.* at 54:17–54:20). Siccardi never visited him in Riker's Island, never mailed him any letters informing him of plea offers, and in fact, never conveyed any plea offer to him. (*Id.* at 54:25–55:16). Vega claimed that the first time he heard of a plea offer was in August 2007 when his wife appeared on his behalf at a court appearance and learned from Siccardi that an offer of 17 years had been made. (*Id.* at 55:23–56:7). Before taking the 20-year plea offer, Vega said he asked Siccardi if the 17-

year offer was still available and counsel responded that it was not because the offer had been made prior to any hearings. (*Id. at* 57:07–57:11). Vega claims that he asked Siccardi why the offer had not been conveyed to him, to which Siccardi allegedly responded that he believed "something was going to happen in [Vega's] favor at the hearings." (Dec. 19 Tr. at 57:13–57:15). Vega believed that Siccardi was "going to be able to do something for [Vega] and [his] case because he told [Vega's] wife on one occasion that [Vega] would love [Siccardi] more than [Vega] loves [his wife]." (*Id.* at 57:20–57:24). Finally, Vega testified that he would have taken the 17-year deal if Siccardi had explained to him the progress of his case or his chances of winning at trial. (*Id.* at 58:22–59:03).

On cross-examination, Vega admitted that he never filed a grievance or complained to a judge about Siccardi's representation prior to sentencing. (*Id.* at 60:20–60:24, 61:15–61:19 ("Q: Prior to the date of your sentencing did you ever complain to any other judge about the fact that you weren't being spoken to about offers in your case and about your case in general? [VEGA]: No.")). He also acknowledged that he never fired Siccardi; he claimed it was because he could not afford to do so. (*Id.* at 60:18–60:19). Vega further admitted that on the two court dates subsequent to when his wife allegedly called about the 17-year offer, August 23, 2007 and September 26, 2007, Vega never addressed the 17-year offer with either his attorney or the Court. (*Id.* at 63:21–63:22, 64:19–64:22). Vega also did not raise the issue of any prior plea offers at the plea hearing when he accepted the 20-year plea bargain. (Dec. 19 Tr. at 67:01–67:11, 70:22–71:04). Vega acknowledged that the first time he brought up the 17-year offer was on the day of his sentencing. (*Id.* at 64:23–65:01). He also admitted that, due to a communication mistake between him and his wife, he erroneously told the Court

that there had been a 15-year offer when no such offer had ever been made. (*Id.* at 65:05–65:10; 65:22–65:24).

Vega's wife, Yesenia Vega, was then called to testify. (*Id.* at 74:09–74:13). Yesenia Vega testified that she retained Siccardi upon the recommendation of a friend. (*Id.* at 75:16–75:24). She claimed that she spoke with Siccardi each time she came to court and that around August 2007, Siccardi told her that an offer of 17 years had been made. (*Id.* at 79:01–79:10). She allegedly relayed the information to Vega that evening when he called her from jail. (Dec. 19 Tr. at 80:07–80:14, 80:22–80:24). Later, Siccardi supposedly told Yesenia Vega that he had spoken with her husband and that Vega had turned down the 17-year offer. (*Id.* at 81:22–81:25). She had no direct knowledge of what had been discussed between Siccardi and Vega. (*Id.* at 98:19–98:22).

The hearing on the motion to withdraw was then continued to December 22, 2011. (Tr. of Mot. to Withdraw Plea dated Dec. 22, 2011 ("Dec. 22 Tr."), attached to State Court Record, Dkt. No. 19 at 108). Siccardi was called to testify. (*Id.* at 110:10–110:12). Siccardi testified that after he was retained, he spoke with the District Attorney's office and was told by ADA Butcher that there was a 20-year offer and that the lowest the office would go is 18 years pre-indictment; he conveyed this information to Vega. (*Id.* at 114:24–115:05, 116:17–116:18). The prosecution then moved into evidence Siccardi's undated, handwritten notes indicating that an offer of 18 years pre-indictment had been made. (*Id.* at 125:22–126:19). Several of the prosecutor's status reports about Vega's case were also admitted. (*Id.* at 124:15–124:20).

Siccardi testified that after he informed Vega of the 18-year offer, both Vega and Siccardi agreed that the offer was too high. (*Id.* at 116:14–116:22). Siccardi also claimed

that he met with Vega every single time his case was on in court and that he spoke with him on the phone several times.  (Dec. 22 Tr. at 115:16–115:21, 115:24–115:25, 118:01–118:02 ("[SICCARDI]: Face to face probably 8 to 10 times, on the phone severa[l] more times.")).  After indictment, Siccardi said he attempted to get a lower offer multiple times, but was unable to do so.  (*Id.* at 118:23–119:02).  Siccardi had multiple conversations with Vega's wife but denied ever mentioning a 17-year offer.  (*Id.* at 119:14–119:17).  He testified that Vega never complained to him about failing to convey an offer.  (*Id.* at 120:03–121:02).  The Court also revisited the issue of whether Siccardi told Vega that he would get consecutive sentences if Vega was found guilty at trial.  Siccardi denied ever saying Vega would get consecutive sentences.  (*Id.* at 152:06–152:15 ("The Court: And there was a question raised at a prior hearing I believe by Mrs. Vega that you conveyed to your client that if it went to trial that you would get consecutive— that he would get consecutive time and that I stated that.  [Siccardi]: That's not something that I would have come up in conversation so I do not ever remember saying that to Mrs. Vega.  I did stress that you were a tough judge but as far as any particulars like that no I did not.")).

Siccardi also admitted that, during the pendency of Vega's case, he had been the subject of a disciplinary hearing, and as a result, he was suspended from practice on June 10, 2008 for six months for neglecting two appeals and for not processing a matrimonial matter expeditiously.  (*Id.* at 141:16–142:02).  He also acknowledged that because of the disciplinary charges, he was under a fair amount of stress at the time.  (Dec. 22 Tr. at 142:12–142:13).  Siccardi was the subject of an earlier disciplinary proceeding as a result of his failure to respond to letters of inquiry from the Appellate Division in October 1992.  (*Id.* at 144:05–144:07).  He further admitted that he had

triple bypass surgery around the time that he was representing Vega, (*id.* at 142:08–142:20, 151:18–151:20), and that his parents passed away at or about the same time, (*id.* at 151:24–152:02).  In October 2007, a grievance committee recommended that Siccardi receive psychiatric counseling.  (*Id.* at 143:16–143:19).

On July 3, 2012, Justice Gavrin issued her opinion.  *People v. Vega*, No. 2098/06, 2012 WL 3875392, at *1 (Sup. Ct. July 3, 2012).  The Court applied the *Strickland* two-part test for evaluating a defendant's Sixth Amendment claim of ineffective assistance of counsel and concluded that "viewed in totality of the circumstances," Siccardi provided "meaningful representation to" Vega.  *Id.* at *4.  As for whether Siccardi actually conveyed the lower plea deal to Vega, the Court found that the prosecutor and Siccardi were more credible than Vega.  *Id.* at *3–5.  The Court found no evidence to suggest that a 17-year offer was ever conveyed to Siccardi and held that the allegation that Siccardi never conveyed the 18-year pre-indictment offer to Vega was unsupported by the evidence.  *Id.* at *5.  Further, the Court found that Vega's plea was made knowingly, voluntarily, and intelligently.  *Id.*  As a result, the Court recommended that the motion to withdraw the plea be denied in all respects.  *Id.*

F.  Subsequent Proceedings

In September 2012, Vega, represented again by attorney Fahey, filed a post-hearing supplemental brief to the New York Appellate Division, Second Department.  (Def-Appellant's Suppl. Br. dated Sept. 2012 ("Vega App. Br. II"), attached to State Record, Dkt. No. 19 at 12).  The supplemental brief argued that contrary to the trial court's findings, Vega had met his burden of showing that Siccardi failed to inform him of a more favorable plea offer, and further, had Siccardi conveyed the more favorable offer, Vega would have accepted it.  (*Id.*).  Vega also argued that the 18-year offer was

not just pre-indictment; rather, it had remained available post-indictment.  (*Id.* at 13).

He also alleged that Justice Gavrin was "so disturbed by the hearing testimony that she

offered him the opportunity to withdraw his plea and plead guilty to the indictment in

return for the 18-year sentence he had missed out on."  (*Id.* at 18).  According to Vega,

Justice Gavrin withdrew the offer only because she thought that resolving the case in

such a manner would exceed the appellate court's limited remand.  (*Id.*).

The Appellate Division affirmed Vega's conviction.  *People v. Vega*, 109 A.D.3d

942 (2d Dep't 2013).  The Court held that Vega had failed to prove that Siccardi did not

convey the lower plea offer to him.  *Id.* at 942.  Because Vega and his wife, and Siccardi,

had contradictory testimony as to whether a particular offer was conveyed to Vega by

Siccardi, there existed a credibility issue which the trial court resolved in Siccardi's

favor.  *Id.*  The Court gave deference to this credibility determination and affirmed the

lower court's judgment.  *Id.* at 942–43.

Vega then sought leave to appeal the Appellate Division's decision to the New

York Court of Appeals.  (Letter from Barry Stendig to Hon. Jonathan Lippman dated

Sept. 26, 2013 ("Leave Pet."), attached to State Court Record, Dkt. No. 19 at 1–2).  The

Court of Appeals denied the application.  *People v. Vega*, 22 N.Y.3d 1044, 1044 (2013)

(summary order).

G.  The Instant Petition

On December 23, 2014, Vega, proceeding *pro se*, filed the instant habeas petition.

(Habeas Pet. dated Dec. 19, 2014, Dkt. No. 1).  Vega alleges that he was denied his right

to effective assistance of counsel because Siccardi failed to convey and advise on the plea

agreement and coerced him into accepting a "less beneficial plea."  (*Id.* at 6).  He also

contends that the New York Supreme Court found that petitioner was threatened by

13

counsel, but erroneously believed it lacked the authority, on remand, to allow Vega to withdraw his initial plea agreement and sentence him to a shorter sentence. (*Id.*).

Vega filed a memorandum of law in support of his petition. (Vega Mem.). In the memorandum of law, he argues that he was denied his right to effective assistance of counsel when: 1) the "State Court" failed to address Siccardi's failure to properly advise Vega during the plea proceedings, 2) the Supreme Court on remand, after "making a factual finding" that Vega was coerced by Siccardi into accepting the 20-year plea offer, improperly failed to grant Vega relief; and 3) the Supreme Court on remand erred by applying the wrong ineffective assistance of counsel standard. (*See generally* Vega Mem.).

The Honorable Kiyo A. Matsumoto referred the instant petition and accompanying memorandums of law to the undersigned. For the reasons stated below, it is respectfully recommended that the petition be denied, and no certificate of appealability be issued.

DISCUSSION

I.  Vega Failed to Fairly Present His Habeas Claims in State Court

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, authorizes federal courts to provide habeas corpus relief to prisoners held in state custody. *See* 28 U.S.C. § 2254(a). AEDPA requires that petitioners first exhaust all available remedies in state court before bringing their claims in federal court. *See* 28 U.S.C. § 2254(b)(1); *see also Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) ("To provide the state with the first opportunity to consider and correct alleged violations of its prisoners' constitutional rights, a state prisoner is required to exhaust all of his available state remedies before a federal court can consider his habeas application.").

For a claim to be exhausted, the petitioner must first "'fairly present' his . . . claim to the state courts." *Jackson*, 763 F.3d at 133 (quoting *Rosa v. McCray* 396 F.3d 210, 217 (2d Cir. 2005)); *see also Picard v. Connor*, 404 U.S. 270, 276, 280 (1971) ("[S]tate prisoner[s] [must] present the state courts with the same claim he urges upon the federal courts."). Although the petitioner need not "cite chapter and verse," the petitioner must "alert the state court to the claim's . . . nature." *Jackson*, 763 F.3d at 133 (quotations omitted); *see also St. Helen v. Senkowski*, 374 F.3d 181, 182 (2d Cir. 2004) (same). A claim is fairly presented if "the petitioner has informed those [state] courts of 'all of the essential factual allegations' and 'essentially the same legal doctrine he asserts in his federal petition.'" *Strogov v. Attorney Gen. of State of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1998) (quoting *Daye*, 696 F.2d at 191–92). That is, "the claims presented by the petitioner must be the 'substantial equivalent' of the claims he raises in his federal petition." *Id.* (citing *Picard*, 404 U.S. at 278). In *Daye v. Attorney Gen. of N.Y.*, the Second Circuit identified four methods by which a petitioner may "fairly present" a claim to state court:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

696 F.2d 186, 194 (2d Cir. 1982). If a petitioner fails to "fairly present" his claims to the state courts and then seeks to raise them in federal court, these claims will be deemed unexhausted. *See Arriaga v. Woods*, No. 05-CV-3422, 2008 WL 4850200, at *4 (E.D.N.Y. Nov. 6, 2008). And the burden is on petitioner to raise these claims to the state courts "even if the state court could have identified and addressed the federal question without its being raised." *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005).

After reviewing the record, the Court concludes that Vega's claims were not fairly presented in state court.[2]

A. <u>Alleged Failure to Provide Competent Legal Advice</u>

Vega first contends that the state courts ignored his claim that Siccardi failed to properly advise him.[3] (Vega Mem. at 23). In essence, this is an ineffective assistance of counsel claim couched in a failure to provide competent legal advice. Vega contends that merely conveying the plea offer to Vega and discussing the plea offer with his wife was insufficient. (*Id.*). Instead, Siccardi should have explained the totality of the circumstances to Vega, including amount of evidence against him, his possibility of success at the suppression hearing, the impact the hearing would have on his case if he was unsuccessful, the possibility of success at trial, and his sentence exposure if he were convicted. (*Id.*). He argues at length that given the facts of his case, there was little

---

[2] There remains one more potential claim: Vega's petition alleges that Siccardi "failed to convey" the 18-year plea offer. (Habeas Pet. at 6). In Vega's memorandum of law, however, he does not raise any arguments pertaining to this claim. Although Vega's state appellate brief focuses primarily on how Siccardi failed to convey the 18-year plea offer, his habeas petition fails to provide any arguments regarding this claim.

Because Vega failed to address Siccardi's failure to convey the 18-year plea offer in his memorandum of law, the Court deems this claim abandoned. *See, e.g.*, *Gjelaj v. Ercole,* No. 09-CV-3126, 2012 WL 4450983, at *16 (S.D.N.Y. Feb. 9, 2012) (finding that although petitioner set forth the claim as a ground for habeas relief in his petition, because petitioner did not address the claim in his memorandum in support of his petition, the claim was abandoned); *King v. Greene*, No. 03-CV-3743, 2006 WL 1764379, at *1 n.1 (E.D.N.Y. June 26, 2006) (finding that although *pro se* petitioner included the claim in his habeas petition, he made no argument concerning the claim in his brief, and as a result, the claim is deemed abandoned).

[3] Which New York state court or courts Vega is referring to is unclear in this portion of his brief. Although this section of the brief begins by discussing the hearings on remand, (*see* Vega Mem. at 23 ("At the hearing on remand, Siccardi maintained that he 'conveyed' the plea offer to Vega, and 'discussed' the plea offer with his wife, Yesenia Vega.")), it transitions to discussing the trial and appellate court decisions generally, (*id.* at 34–35).

chance of success at the suppression hearing, and that Siccardi should have informed him about these limited prospects. (*Id.* at 24–28). He also argues that Siccardi's assumption that he could get a better plea offer after a favorable suppression hearing demonstrates his ineffectiveness and failure to properly advise him. (*Id.*).

These arguments are absent from Vega's state appellate briefs. Although Vega made an ineffective assistance of counsel claim in state court, he did not mention any of these alleged acts of substandard representation—failure to advise Vega on the likelihood of success at the suppression hearing, false assumption that he would receive a better plea deal after the suppression hearing, etc.—to the Appellate Division on direct appeal. The ineffective assistance of counsel claims below focus entirely on how Siccardi failed to convey the 18-year plea offer and how he became an adverse witness against Vega during sentencing—an entirely different set of allegations. (*See, e.g.*, Vega App. Br. I at 8 ("[T]he court, without first giving him an opportunity to retain, or assigning him, new counsel, and addressing only his allegations about the earlier plea offer, denied the application. In these circumstances, appellant was denied his right to the effective assistance of counsel."), 10 ("[D]efense counsel denied appellant's allegations. . . . Counsel thus voluntarily enlisted as a witness against his client. . . . As a result, appellant's right to counsel was severely compromised."); Vega App. Br. II at 16 ("Siccardi not only failed to inform appellant of the 18-year offer when it was first made, he also failed to do so during the 12 months or so that the offer remained on the table."), 17–18 ("To prevail on a claim of ineffective assistance of counsel based upon counsel's failure to advise defendant of a more favorable plea offer than what he subsequently accepted[.]")). There is no argument that Siccardi failed to explain the "totality of circumstances" to Vega, including chances of success at the suppression hearing, trial,

and sentencing.  And although the New York State Supreme Court adjudicated—by denying—Vega's ineffective assistance of counsel claim, a finding which the New York Appellate Division affirmed, the Appellate Division did not address, because Vega did not make, an ineffective assistance claim based the arguments he now raises.  As such, Vega's habeas claim based on such allegedly deficient legal advice was not fairly presented in state court.  *See, e.g.*, *Jackson*, 763 F.3d at 143–44 (holding that although defendant alleged prosecutorial misconduct, he did not include the prosecutor's elicitation of prior bad acts as an example of such misconduct, and therefore that portion of the prosecutorial misconduct claim was unexhausted); *Catalano v. Colson*, 493 F. App'x 696, 700–01 (6th Cir. 2012) (noting that although petitioner raised in his post-conviction brief several reasons why his counsel was ineffective—including lack of experience and failure to discuss the case or rights with his client—because the habeas petition rested on a different factual predicate—failure of counsel to explain an element of the crime—claim of ineffective assistance was not fairly presented).

B. Alleged Errors on Remand

Vega's petition also contends that on remand, the New York State Supreme Court found that Siccardi made "threatening" and "coercive" statements to Vega, but believed it lacked authority to allow Vega to withdraw his plea and sentence him to 18 years. (Vega Mem. at 12, 40).  Vega alleges that the New York Supreme Court then committed two errors: failing to realize that it had the authority and power to permit Vega to take a more favorable plea and then failing to grant Vega's motion to withdraw the plea and

impose a lower sentence.[4]  (Vega Mem. at 45).  These alleged errors—that the New York Supreme Court erred on remand after finding Siccardi coerced Vega—were not fairly presented to the New York State Appellate Division in Vega's supplemental appellate brief.

On remand the New York Supreme Court revisited the issue of whether Siccardi threatened Vega in order to coerce him into taking the 20-year plea offer.  (Dec. 22 Tr. at 152:06–152:15).  These allegations were first made at Vega's sentencing hearing. (Sent. Tr. at 6:10–6:13).  The Court ultimately found, however, that Vega's plea was entered knowingly, voluntarily, and intelligently and that Siccardi provided meaningful representation to him.  *Vega*, 2012 WL 3875392, at *5.

---

[4] The first part of this claim—whether the trial court erroneously ruled that it lacked the authority on remand to permit Vega to take a more favorable plea—is not cognizable on federal habeas review because it is a question of state court power and authority and a purely state law issue.  *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law." (quotations omitted)).

As for the second error—that the New York State Supreme Court failed to grant the motion to withdraw plea and lower Vega's sentence after allegedly determining that Siccardi's statements were coercive—although a state judge's denial of a motion to withdraw a guilty plea is generally not subject to federal habeas review, it is reviewable when the plea is not entered intelligently or voluntarily.  *See Ferrer v. Superintendent*, 628 F. Supp. 2d 294, 308 (N.D.N.Y. 2008) ("A state judge's denial of a motion to withdraw a guilty plea is generally not subject to habeas corpus review unless the plea was not entered intelligently or voluntarily.").  Since Vega alleges that the court erred because Siccardi coerced Vega into entering the plea deal, and in light of the fact that Vega is proceeding *pro se*, the Court construes this claim as cognizable on habeas review.  *Cf. Gutierrez v. Ricks*, No. 02-CV-3780, 2002 WL 31360417, at *6 (S.D.N.Y. Oct. 21, 2002) (noting that weight of the evidence claims are not cognizable on federal habeas review, but "[c]onstruing Gutierrez's pro se petition liberally to raise the strongest arguments that it suggests, the Court treats his petition as stating claims going to both the weight and the sufficiency of the evidence." (quotations, citation, and brackets omitted)).

After the decision on remand, *id.*, Vega filed a supplemental brief with the Appellate Division arguing that the Court's credibility findings—that Siccardi conveyed the pre-indictment 18-year offer to Vega—were erroneous. (Vega App. Br. II 12–19). In this supplemental brief, however, Vega did not make any allegations that Siccardi threatened or coerced him. (*Id.*). Nor did he allege that the lower court erred by failing to correct for Siccardi's coercion. The Appellate Division's decision therefore affirmed the lower court's decision without addressing—because it had no occasion to—whether Siccardi coerced Vega or whether the lower court erred in failing to correct Vega's plea and sentence in light of such coercion. *Vega*, 109 A.D. 3d at 942–943 ("The defendant claims that his plea of guilty was rendered involuntary because his attorney was ineffective in that he failed to advise the defendant of a prior plea offer that the defendant would have accepted. . . . The credibility determinations of a hearing court are entitled to great deference on appeal, and will not be disturbed unless clearly unsupported by the record[.]" (quotations omitted)).

Vega contends that the New York Supreme Court erred because Justice Gavrin stated, "There are several statements that came out during this trial . . . [t]hat are either intimidating, untruthful, coercive," (Dec. 22 Tr. at 167:23–167:25), but nonetheless allowed Vega's plea to stand. (*See* Vega Mem. at 45). Vega argues that allowing his conviction to stand after making such a factual finding was an erroneous and unreasonable application of law by the New York State Supreme Court, which the New York Appellate Division unlawfully affirmed. (*Id.* at 45–46).

Because this claim is based on Justice Gavrin's decision, these arguments should have been raised in Vega's supplemental brief to the Appellate Division. However, Vega failed to do so. The supplemental appellate brief does not mention Siccardi's allegedly

coercive statements at all and Vega never argues that the lower court on remand erred by failing to correct or address the fact that Vega was coerced into taking the 20-year plea.  (Vega App. Br. II at 12–19).

Applying the *Daye* factors here, the Court concludes that no federal claim was fairly presented to the state courts.  Vega did not fairly present his claim using methods one and two outlined in Daye: Vega never relied on any pertinent federal or state cases employing a constitutional analysis to the alleged error—a failure to take corrective action after finding that a defendant was coerced—in his supplemental appellate brief; nor did Vega cite to any cases where a court erred in such a fashion.  *Daye*, 696 F. 2d at 194.  The third and fourth *Daye* methods, asserting a claim in terms so particular as to call to mind a specific right protected by the Constitution or raising a pattern of facts well within the mainstream of constitutional litigation, were also not utilized.  *Id*.  Vega did not raise the errors allegedly made by the lower court and did not include any mention of coercion in his supplemental brief.[5]  *See Daye*, 696 F.2d  at 191 ("[Petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim.").  As such, the Court finds that the alleged errors

---

[5] Although Vega vaguely references in his supplemental appellate brief that Justice Gavrin was "distressed" by the testimony, (Vega App. Br. II at 2 ("At the end of the hearing, Justice Gavrin, saying that she was 'deeply distresse[d]' by 'many things that came out' during the hearing, which, she indicated, raised a question in her mind as to whether Siccardi had provided appellant with the vigorous representation to which he was entitled."), 13 ("[I]t is apparent that Justice Gavrin thought that Siccardi, perhaps distracted by health problems, the death of his parents, and the disciplinary proceedings he was facing, did not give this very serious case the attention it deserved.  She was also taken aback by his rather cavalier record-keeping")), he never once mentions coercion by Siccardi or these alleged errors by Justice Gavrin that he now identifies in his habeas petition.

were not fairly presented to the Appellate Division and therefore not cognizable on habeas review.

    C.  <u>Claim Based on *Lafler v. Cooper*</u>

Finally, Vega argues that the New York Supreme Court on remand misidentified the standard for ineffective assistance of counsel and that then on appeal, the Appellate Division failed to correct this error.  (Vega Mem. at 47–49).  Vega claims that the on remand the court should have used the standard from *Lafler v. Cooper*, 566 U.S. 156 (2012) to determine whether Siccardi's ineffective legal advice caused Vega to reject an earlier, more beneficial plea offer.  (*Id*.).

This argument was also not raised in Vega's supplemental appellate brief and therefore was not fairly presented to the State Appellate Division.  Although Vega cited to *Lafler v. Cooper*, 566 U.S. 156 (2012), in this brief, he references it only for the purpose of laying out the standard for ineffective assistance of counsel.  (Vega App. Br. II at 17–18 ("To prevail on a claim of ineffective assistance of counsel based upon counsel's failure to advise defendant of a more favorable plea offer than what he subsequently accepted, the defendant must show that the more lenient plea offer was made, that defense counsel failed to inform him of the offer, and that defendant would have been willing to accept it if he had been informed of it. . . . *Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012) (stating the federal test in slightly different terms).").  Vega never claims that the lower court applied the incorrect standard for ineffective assistance

claims or failed to consider or properly apply *Lafler*. Therefore, this claim was not fairly presented in state court.[6]

II.    Consequences for Failure to Fairly Present and Procedural Default

A claim that is not fairly presented to a state court is deemed an unexhausted claim. *See Arriaga*, 2008 WL 4850200, at *4. A federal court may not grant habeas relief based upon unexhausted claims. 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State[.]"). Although a petitioner like Vega is permitted to return to state court to exhaust claims deemed unexhausted, *see Brown v. Senkowski*, 152 F. App'x 15, 18 (2d Cir. 2005) ("Where, as here, a petitioner's claims are unexhausted, the petitioner will be permitted to return to state court to exhaust his claims unless no state corrective procedure remains available."), the federal court may nonetheless deny habeas relief by finding that those claims were procedurally defaulted in state court. *See id.* ("In this case, because petitioner can no longer obtain state-court review of his federal constitutional claim on account of a procedural default, that claim is now to be deemed exhausted." (citation omitted)). A procedural default occurs in state court "if the state prisoner fails to exhaust his state remedies in a manner in which,

---

[6] Vega's Reply Brief opines on the need for state courts to adopt the suggested policies and practices by the Supreme Court in *Missouri v. Frye*, 566 U.S. 134 (2012), and the effects of their failure to do so. Specifically, he argues that state courts should adopt measures to ensure that defendants are fully informed of the terms of the plea and negotiation process. (Vega Mem. at 19–20, 47–49). Federal courts, in conducting habeas review, are limited to "deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67–78. Vega's broad policy argument, therefore, does not raise a cognizable habeas claim.

were he to return to the state courts with his unexhausted claim, those courts would find the claim barred by the application of a state procedural rule." *Jackson*, 763 F.3d at 133.

All of Vega's claims in his habeas petition are unexhausted because of his failure to present them to the New York state courts. Were he to return to state court, his only two avenues to now present these claims would be in a renewed appeal to the New York Appellate Division and/or Court of Appeals or through a Section 440.10 motion to vacate the judgment against him. *Id*. at 143 (citing N.Y. Crim. Proc. Law § 440.10). State procedural rules bar Vega from both using either proceeding.

With respect to a renewed appeal, a defendant is "entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals." *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) (citing N.Y. Crim. Proc. Law § 450.10(1); N.Y. Court R. § 500.10(a)). Vega has completed his direct appeal to the New York Appellate Division and his one request for leave to the New York Court of Appeals. (*See* Vega App. Br. I; Vega App. Br. II; Leave Pet.). He could not, therefore, present the unexhausted claims in a new state appeal.

As for a Section 440.10 motion to vacate a judgment, a defendant is barred from such relief if there were sufficient facts on the record to permit appellate review of his claims and he unjustifiably failed to raise them on direct appeal. *See Jackson*, 763 F.3d at 143 (citing N.Y. Crim. Proc. Law § 440.10(2)(c)). "The purpose of this rule is to prevent Section 440.10 from being employed as a substitute for direct appeal when the defendant was in a position to raise an issue on appeal or could readily have raised it on appeal but failed to do so." *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) (quotations, brackets, and alteration omitted). Vega's claims are based entirely on four hearings—the suppression hearing, plea proceeding, subsequent sentencing, and

evidentiary hearing on remand. This factual record was available to Vega in his appeals to the Appellate Division. All of his claims—incompetent legal advice, errors on remand regarding his allegedly coerced plea, and whether the court applied the wrong standard under *Lafler*—are predicated on facts contained in the available hearing record. This is evidenced by Vega's repeated reliance on the state hearing transcripts in his federal court briefs. (*See, e.g.*, Vega Mem. at 32 ("Vega testified that had counsel advised him fully of the circumstances and he would have realized that 'the deck was stacked against' him, and that if counsel would have explained to him his chances of 'winning or failing' at trial, he 'would have taken' the 17 year plea offer." (citing to Dec. 19 Tr. at 62:09– 62:14))). Yet, he failed to raise any of these claims in his state appeal. As a result, any Section 440.10 motion would be dismissed, without the court reaching the merits of the new claims. *See, e.g.*, *People v. Cooks*, 67 N.Y.2d 100, 104 (1986) ("Only in the unusual situation that sufficient facts with respect to the issue do not appear on the record is a CPL 440.10 motion to vacate available as a means of review."); *People v. Sanchez*, 212 A.D. 2d 487–88 (1st Dep't 1995) ("The motion court correctly determined that there were sufficient facts in the record for defendant to have raised on appeal all of the issues now raised in his CPL 440.10 motion. Indeed, defendant cites to the trial transcript in support of his ineffective assistance of counsel claim." (citations omitted)); *People v. Dickson-Eason*, 143 A.D.3d 1013, 1015 (3d Dep't 2016) (affirming state trial court's decision to deny the Section 440.10 motion without reaching the merits because defendant's claim–that his plea was involuntary due to counsel's ineffective assistance by giving misleading advice and misinformation—was based on sufficient facts from the record for defendant to raise the claim in direct appeal); *People v Espiritu*, No. 1599/99, 2005 WL 1845658, at *2 (Sup. Ct. June 17, 2005) (declining to review Section 440.10

motion on the merits when ineffective assistance of counsel claim based on counsel's failure to ask for jury instruction was "based solely on the record that was before the Appellate Division on direct review"). Such a dismissal is considered a state procedural bar. *See Sweet*, 353 F.3d at 139–40.

Because no state avenues remain for Vega to bring these claims, it is appropriate for this Court to deem the habeas claims procedurally defaulted and dismiss these claims.[7] "A state prisoner's procedural default in the state courts will . . . bar federal review" except in narrow circumstances inapplicable to Vega. *See Jackson*, 763 F.3d at 133. In the face of state procedural default, the federal court must "deem the [habeas] claim procedurally defaulted." *Id.* (quotations omitted); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." (quotations omitted)). "[W]hen a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *see, e.g.*, *Sweet*, 353 F.3d at 139–140; *Jackson*, 763 F.3d at 143–44 ("For these reasons, we deem this issue exhausted but procedurally defaulted."); *Senkowski*, 152 F. App'x at 19 ("However, because of the

---

[7] A federal court may on collateral review adjudicate a procedurally barred claim if the habeas petitioner can "show cause for the default and prejudice" or "demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749–50 (quotations omitted); *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 91 (1977). Vega has failed to make any arguments about cause, prejudice, or a fundamental miscarriage of justice.

procedural default, petitioner is not entitled to have his claims entertained in a federal habeas proceeding[.]").

V.    Certificate of Appealability

Rule 22(b) of the Federal Rules of Appellate Procedure provides that "[i]n a habeas corpus proceeding in which the detention complained of arises from process issued by a state court . . . the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b).  A certificate of appealability should issue if "the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *see also* 28 U.S.C. § 2553(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.").  Vega has failed to make a substantial showing of a violation of a constitutional right.  Nor has he demonstrated that jurists of reason would find it debatable that he has procedurally defaulted the claims he raises in his habeas petition.  As such, the Court recommends that no certificate of appealability should issue with respect to any of Vega's claims.  *See, e.g.*, *Swanton v. Graham*, No. 07-CV-4113, 2009 WL 1406969, at *8 (E.D.N.Y. May 19, 2009) (holding that a certificate of appealability should not issue because petitioner had not demonstrated a substantial showing of a denial of a constitutional right and all claims raised were procedurally barred or defaulted).

<u>CONCLUSION</u>

For the reasons stated above, the Court respectfully recommends that the petition be denied, and a certificate of appealability not issue.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[] [judge's] report operates as a waiver of any further judicial review of the magistrate[] [judge's] decision.") (quotations omitted). Respondent is ordered to serve the Report and Recommendation on Petitioner and file proof of service by **April 27, 2020.**

*/s/ Sanket J. Bulsara* April 13, 2020
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York